# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Richard Zuniga (B37419), ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 13 C 2637 |
| v. ) | |
| ) | Judge John Z. Lee |
| ) | |
| Nedra Chandler, Warden, ) | |
| Dixon Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Richard Zuniga, currently in state custody at the Dixon Correctional Center, brings this habeas corpus petition pursuant to 28 U.S.C. § 2254. Zuniga was convicted of two murders following a 1992 trial in the Circuit Court of Cook County. His petition asserts that his trial counsel, Nicholas DeJohn, provided ineffective assistance in violation of the Sixth Amendment under the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, Zuniga states that DeJohn: (1) failed to comprehend the importance of eyewitness testimony that a shotgun used in one of the murders was carried into the apartment under Zuniga's coat; (2) had no discernible trial strategy; (3) was frequently absent from trial; (4) failed to obtain fingerprint testing on the shotgun; (5) failed to obtain a ruling on Zuniga's motions to suppress; and (6) conceded Zuniga's guilt. *See* Pet. Writ Habeas Corpus ¶¶ 69–101.[1] For the reasons set forth below, Zuniga's petition is denied.

---

[1] These claims are discussed in a different order in the petition and briefing. The Court has reordered the claims in order to facilitate understanding of this opinion.

## I. Factual Background[2]

Zuniga, along with his codefendant, Joe Bravieri, was convicted of murdering Joann Gasic and Carmine Sarlo. State R., Ex. A, at 1. Sandra Ault, who lived with Gasic, witnessed the murders occur. *Id.* at 2.

On the day of the murders, Ault returned to the apartment that she shared with Gasic after work at 3:30 a.m. *Id*. at 2. At that time, Gasic was the only other person in the apartment. *Id*. Ault went to sleep and awoke at 7:00 a.m. *Id*. When she awoke, she witnessed Zuniga, Bravieri, Sarlo, and Gasic in the apartment. *Id*. Ault noticed that Bravieri was carrying Zuniga's coat by the collar out in front of him, *id*., but she could not recall whether Zuniga and Bravieri had entered the apartment together. *Id*. at 3–4. She stated that she never saw Zuniga with any sort of weapon at the time of the murders. *Id.* at 4.

Gasic went into the apartment's living room to lie down while Zuniga, Bravieri, Sarlo, and Ault played cards in a separate dining room. *Id*. at 2. During the game, Bravieri provided the card players with cocaine, which they all consumed. *Id.* Soon thereafter, Bravieri stood up and went to the living room. *Id.* Ault then heard a loud noise. *Id.* From the dining room, Ault witnessed Bravieri holding a shotgun in the living room. *Id.* She heard him state, "You got to go, [Gasic]. You just got to go." *Id.* Bravieri then shot twice in Gasic's direction. *Id.*

Bravieri walked back into the dining room and pointed the shotgun at Ault. *Id*. at 2–3. Bravieri fired at her, but she dropped to the floor and eluded the shot. *Id*. Zuniga and Sarlo then ran to a doorway between the apartment's kitchen and living room. *Id*. at 3. Sarlo said, "Oh, we

---

[2] This background is drawn from the Illinois Appellate Court's decision on direct appeal. State R., Ex. A, at 1–9. It is not in dispute. "The state court's factual determinations are entitled to a presumption of correctness, and [Petitioner] has the burden of overcoming this presumption by clear and convincing evidence." *Thompkins v. Pfister*, 698 F.3d 976, 983 (7th Cir. 2012) (citing 28 U.S.C. § 2254(e)(1)).

2

need to get out of here." *Id*. Bravieri responded, "No, you got to go, [Sarlo]. You got to go, too." *Id*. Ault then heard what sounded like the three men wrestling in the living room. *Id*.

Soon thereafter, Bravieri re-entered the dining room and discovered Ault was still alive. *Id*. He agreed to let her leave the apartment after she promised to tell the police she had seen nothing. Bravieri then walked into the kitchen. *Id*. Immediately thereafter, Ault heard someone going through the kitchen's silverware drawer . *Id*. She heard Bravieri tell Zuniga, "You got to shoot him in the head, Ricky." *Id*. Upon hearing this, Ault fled out the back door. *Id*. As she fled, she saw a dark silver handgun on a bar. *Id*. Ault had not seen anyone put the gun on the bar—and had not seen Zuniga with the gun that day—but had previously witnessed Zuniga with the gun several times. *Id*. Upon exiting the apartment, Ault called the police. *Id.* at 2. She told an officer that "Joey" and "Ricky" were shooting people at the apartment. *Id.*

According to another trial witness, Zuniga and Bravieri left the scene of the murders and went to a separate residence. *Id*. at 4. When they arrived, the witness observed blood on Bravieri's pants. *Id.* Zuniga and Bravieri changed clothes. *Id.* Soon after, the police arrived. *Id.* They served arrest warrants on Zuniga and Bravieri and recovered clothing from a garbage bag. *Id.*

Zuniga was questioned at the police station following his arrest. *Id*. at 5. He reportedly told the police that "he and Bravieri were partners, that they did it together, and that if Bravieri was going down, he was going down too." *Id*. Zuniga then related a story consistent with Ault's account of the events. He admitted that he and Bravieri left the apartment and went to a house to change clothes, and that the clothes the police recovered were the clothes he and Bravieri had been wearing during the murders. *Id*. Zuniga also acknowledged that he carried a .38 caliber pistol for protection and would place the gun on the bar at Gasic's house whenever he was there.

3

*Id*. Zuniga stated that he did not know Bravieri's motive for shooting Gasic, but he suggested it was drug-induced. *Id.*

In a later statement, Zuniga added that he was in the bathroom when he heard the first of two shotgun blasts. *Id.* When he came out, he saw Bravieri and Sarlo struggling with the shotgun. *Id.* at 5–6. Bravieri fell to the floor, and Sarlo pointed the shotgun at him. *Id*. at 6. Zuniga admitted that he then shot Sarlo several times in the chest with his handgun.[3] *Id*. After Zuniga shot Sarlo, Bravieri placed the shotgun in the kitchen sink, and they left the apartment. *Id*. On their way to change clothes, Zuniga threw his handgun in a river. *Id.*

At the apartment, police discovered the bodies of Gasic and Sarlo in the living room. *Id.* at 4. They also recovered a shotgun from the kitchen sink, several knives, various ammunition, an ammunition clip, and pieces of a pistol grip. *Id.* at 6. The shotgun was not examined for fingerprints, and no fingerprints were lifted from the gun grips or knives. *Id.* at 6–7. The kitchen, living room, and bathroom were dusted for fingerprints, and blood standards were also taken. *Id.*

Gasic's autopsy showed that she died from close-range shotgun wounds. *Id*. at 8. Sarlo's autopsy revealed extensive injuries to his head and face, as well as multiple stab and gunshot wounds to his chest and back. *Id*. The doctor, who performed the autopsy, testified that the pistol clip found in the apartment contained an outline similar in size and shape to the wounds Sarlo suffered to his head and face. *Id*. In addition, Sarlo suffered extensive bleeding on both sides of the brain, a knife wound to the heart, and gunshot damage to his liver, spleen, and kidney. *Id*. at 9. The doctor opined that Sarlo was alive during the infliction of most of his injuries and that the beating took place within a ten- to fifteen-minute period. *Id*. The stab wounds, gunshot wounds, and blunt trauma were each so serious that any could have been fatal.

---

[3]  It is not clear from the record whether this occurred before or after Ault fled the apartment.

*Id.* Finally, the doctor concluded that the number of injuries inflicted and weapons used were not consistent with a struggle. *Id.*

A forensic analyst testified that strands of Sarlo's hair were found on the pistol grip, clip, and knives. *Id.* at 7. A lab technician also testified that Sarlo's blood was found on Zuniga's shirt, socks, and coat. *Id.* Sarlo's blood was found on three different knives, while Zuniga's, Bravieri's, and Gasic's blood was not. *Id.* Blood found in the living room was consistent with Gasic's and Sarlo's, but also could have been Zuniga's. *Id.* There was insufficient blood on the shotgun handle to make a comparison. *Id.*

A police firearms examiner testified that the police had recovered three shotgun shells fired from the shotgun in the kitchen. *Id.* A bullet recovered from Sarlo's body was a .38 caliber bullet that could have been fired from a Colt .38 caliber pistol. *Id.* The clip and grip were from a Colt .38 caliber pistol. *Id.*

## II. Procedural Background

Zuniga was convicted of two counts of first degree murder after a bench trial that had been severed from, but conducted simultaneously with Bravieri's bench trial. *Id.* at 1. Zuniga directly appealed to the Illinois Appellate Court, asserting in pertinent part that his trial counsel, DeJohn, was constitutionally ineffective on three grounds: (1) DeJohn had failed to secure a hearing on motions to suppress concerning Zuniga's statements to police; (2) DeJohn had conceded Zuniga's guilt at trial; and (3) DeJohn had failed to develop a consistent trial strategy. *Id.*, Ex. B, at 11–14. The appeal was denied. *Id.*, Ex. A, at 14–20. Zuniga then filed a Petition for Leave to Appeal (PLA) before the Supreme Court of Illinois, again asserting that DeJohn had been constitutionally ineffective for failing to secure a hearing on the motions to suppress and by making statements that conceded Zuniga's guilt. *Id.*, Ex. F, at 7–19. Zuniga did not, however,

present the additional claim regarding DeJohn's purported failure to develop a consistent trial strategy. The PLA was denied. *Id.*, Ex. E.

Following denial of the PLA, Zuniga filed a petition in state court for post-conviction relief, raising in part a new claim that DeJohn was frequently absent from Zuniga's trial and therefore constitutionally ineffective. *Id.*, Ex. V, Pt. 1, at 26–27. The trial court summarily dismissed the petition. *Id.*, Ex. G, at 17. On appeal, however, the Illinois Appellate Court reversed the trial court's dismissal and remanded with instructions for the court to further consider two of Zuniga's claims, including the claim based on DeJohn's purported absences during trial. *Id.*, Ex. G, at 27. The trial court did so and again dismissed the petition. *Id.*, Ex. J, at 2. On appeal, the Illinois Appellate Court again reversed in part, instructing the trial court to hold an evidentiary hearing on the question of DeJohn's claimed absences. *Id.*, Ex. J, at 15–16.

In advance of the evidentiary hearing, the trial court made two preliminary rulings. First, the court denied Zuniga's request for discovery to conduct a fingerprint analysis of the shotgun (under the theory that the results might exculpate Zuniga and, therefore, provide further evidence that DeJohn was ineffective for failing to obtain the results). *Id.*, Ex. N, at 7–8. Second, the court granted the government's request to limit the scope of the evidentiary hearing to the question of DeJohn's absenteeism and excluding evidence that Zuniga had sought to introduce detailing the lack of trial experience of one of DeJohn's associates. *Id.*, Ex. N, at 8. At the evidentiary hearing, the trial court found that DeJohn was not frequently absent from trial and denied Zuniga's request for post-conviction relief. *Id.*, Ex. W, at 328.[4]

---

[4] The court completed its own review of the trial transcript and found no indication that DeJohn was absent on a frequent basis. *Id.* at 322–23. Additionally, the court relied on testimony from the prosecutor in the case, *id.* at 321, as well as a sworn affidavit from the presiding judge, *id.* at 325, who attested to DeJohn's presence during the trial. The court did not find the testimony of DeJohn's associate—who testified that DeJohn was frequently absent—credible. *Id.* at 324.

Zuniga appealed to the Illinois Appellate Court, arguing that the trial court's preliminary rulings were erroneous and challenging the court's finding that DeJohn was not frequently absent from trial. *Id.*, Ex. O. The court affirmed on all grounds. *Id.*, Ex. N. In a subsequent PLA to the Supreme Court of Illinois, however, Zuniga limited his arguments to the trial court's preliminary rulings—*i.e.*, denying Zuniga the ability to perform fingerprint analysis on the shotgun, and excluding evidence of DeJohn's associate's qualifications—and did not present the separate, broader arguments that DeJohn had been constitutionally ineffective because he had not pursued fingerprint testing of the shotgun and because of his frequent absences from trial. *Id.*, Ex. S, at 12–17. The court denied the PLA. *Id.*, Ex. R. Zuniga then filed the federal petition now before this Court.

## III. Petitioner's Claims

### A. Procedurally Defaulted Arguments

Zuniga contends that his trial counsel, DeJohn, was ineffective because he: (1) failed to comprehend the importance of Ault's testimony that the shotgun had been carried into the apartment under Zuniga's coat; (2) had no discernible trial strategy; (3) was frequently absent from trial; (4) failed to obtain fingerprint testing on the shotgun; (5) failed to obtain a ruling on Zuniga's motions to suppress; and (6) conceded Zuniga's guilt.[5] Respondent counters that the first four of these arguments are procedurally defaulted. For the reasons explained below, the Court agrees.

---

[5] Zuniga also asserts that "Mr. DeJohn's behavior during the trial evidenced some level of mental confusion," states that "Mr. DeJohn's behavior was clearly inappropriate," and concludes that Mr. DeJohn's behavior "indicate[s] that he was not fully present mentally at the time of trial." Pet. Writ ¶¶ 70–71, 74. It is unclear whether Zuniga provides this information merely "[a]s a preliminary matter" through which his other claims should be viewed, *id.* ¶ 70, or as a separate allegation of ineffective assistance. If the latter was intended, Zuniga concedes that the claim is procedurally defaulted for the reasons explained in this section. *Id.* ¶ 74 (stating that Zuniga "did not petition the Illinois Supreme Court for review of the denial of relief on this issue").

7

"To obtain federal habeas review, a state prisoner must first submit his claim through one full round of state-court review." *Johnson v. Hulett*, 574 F.3d 428, 431 (7th Cir. 2009) (citing *Picard v. Connor*, 404 U.S. 270, 275–76 (1971)).[6] The prisoner must "fairly present[]" the "substance" of his claims by "articulating both the operative facts and applicable law" that entitle him to relief. *Id.* The fair-presentment requirement "reflects a policy of federal-state comity" by endeavoring to give state courts the first opportunity to correct constitutional violations underlying a prisoner's conviction. *Picard*, 404 U.S. at 275. In Illinois, fair presentment requires that Zuniga present a claim through all levels of the Illinois courts, including in a PLA before the Supreme Court of Illinois. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842–46 (1999)). Otherwise, the claim is procedurally defaulted. *Id.*

For the purposes of determining whether an ineffective assistance of counsel claim is fairly presented—and thus not procedurally defaulted—it is not enough that ineffective assistance of counsel was alleged as a general matter in state proceedings. Rather, the Court must look closely to the individual factual bases, arguments, and theories underlying an allegation of ineffective assistance. *See Pole v. Randolph*, 570 F.3d 922, 934–35 (7th Cir. 2009). In order to fairly present each specific argument, Zuniga must raise the particular factual basis as well as a corresponding legal analysis for each failing that allegedly renders assistance ineffective. *See id.* at 935; *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) ("[T]he purposes behind the rules of procedural default require[] a party to present to the state court both

---

[6] Zuniga seems to suggest that because his case was pending in state courts prior to the passage of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), "which changed the standards for the grant of habeas corpus relief," AEDPA's exhaustion requirements should not apply. Pet.'s Reply ¶ 3. But AEDPA nevertheless applies to Zuniga's case, because he filed his petition in federal court after AEDPA's effective date. *Woodford v. Garceau*, 538 U.S. 202, 206–07 (2003). In any event, exhaustion requirements for habeas petitions predate AEDPA. *See Wainright v. Sykes*, 433 U.S. 72, 80 (1977) (tracing the requirement of exhaustion of state court remedies to *Ex parte Royall*, 117 U.S. 241 (1886)).

the facts and the law on which he relies."). Otherwise, the argument based on the alleged failing is defaulted, even though the general claim of ineffective assistance of counsel (based on other, adequately argued grounds) may be able to proceed. *Pole*, 570 F.3d at 935.

An example similar to Zuniga's case illustrates when a particular basis for an ineffective-assistance claim is fairly presented. In *Stevens*, the petitioner sought to argue in his federal habeas petition that his trial lawyers were ineffective for failing to pursue a defense of guilty but mentally ill. 489 F.3d at 893. The petitioner had claimed ineffective assistance on various grounds in the state courts, but he never presented the specific argument that his lawyers should have pursued this particular defense. *Id.* at 893–94. Accordingly, the Seventh Circuit found the claim was procedurally defaulted. *Id.* at 894. In reaching this conclusion, the court explained that the petitioner had "couched his mental illness defense theory either in general terms" before the state courts or "in terms specific to an insanity defense," which was a separate argument. *Id.* Thus, by failing to present to the state courts the specific argument that his counsel had failed to pursue the defense of guilty but mentally ill, the petitioner had not "sufficiently alerted" the state courts to his claim. *Id.* The petitioner's failure to give the state courts the first opportunity to consider this specific argument precluded federal courts from considering its merits.

Similarly, here, with respect to each of his first four arguments, Zuniga has either couched the argument in general terms, presented the argument in terms specific to other grounds for ineffective assistance, or simply failed to present the argument in a PLA before the Supreme Court of Illinois. The arguments are therefore defaulted.

        1.      **Argument One: DeJohn's Failure to Comprehend Importance of Ault's Testimony**

Zuniga first argues that DeJohn was ineffective because he failed to comprehend the importance of Ault's testimony that Zuniga's codefendant, Bravieri, carried Zuniga's coat into

<mark>9</mark>

the apartment in front of him.  Pet. Writ ¶ 76.  On direct appeal, the Illinois Appellate Court noted that it was reasonable to infer from Ault's testimony that Bravieri had carried the shotgun used to kill Gasic under Zuniga's coat, thus supporting Zuniga's conviction under a theory of accountability.  State R., Ex. A, at 10–11.  Zuniga states that DeJohn did not cross-examine Ault as to this testimony, but instead lauded Ault's credibility, imploring the court to believe her.  Pet. Writ ¶¶ 76, 82–83.  Accordingly, Zuniga argues that DeJohn's actions indicate that he misunderstood the theory of accountability supported by Ault's testimony and, thus, DeJohn's representation was constitutionally ineffective.  *Id.*

This argument is procedurally defaulted because Zuniga never made this argument in either his direct appeal or petition for state post-conviction relief.  Zuniga disagrees, pointing out that the factual bases for this claim—DeJohn's failure to cross-examine Ault and his statements about her testimony in closing argument—were referenced in both Zuniga's direct appeal to the Illinois Appellate Court and his PLA to the Supreme Court of Illinois.  Pet.'s Reply ¶¶ 5–6.  But, in both instances, Zuniga presented these facts to support *different* allegations of ineffective assistance—namely, allegations that DeJohn had failed to develop a consistent trial strategy and that he had conceded Zuniga's guilt.  State R., Ex. B, at 13–14; *id.*, Ex. F, at 16–17.  As Zuniga's own briefing makes clear, failure to develop a consistent trial strategy and concession of guilt are grounds entirely separate from DeJohn's failure to comprehend the importance of Ault's testimony.  Pet.'s Writ ¶¶ 76–78.  Additionally, the law that applies to a claim of having an inconsistent trial strategy, *e.g.*, *Earls v. McCaughtry*, 379 F.3d 489, 494 (7th Cir. 2004), differs from that applicable to a claim of conceding guilt, *e.g.*, *United States v. Flores*, 739 F.3d 337, 339–40 (7th Cir. 2014), which in turn differs from that applicable to a claim alleging misunderstanding of law, *e.g.*, *Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015).

Thus, a claim based on having an inconsistent trial strategy or concession of guilt or does not fairly present a claim based on misunderstanding of law, even if based in part on the same facts, because the nature of the claim and controlling law differ.[7] Zuniga never fairly presented the specific claim that DeJohn was constitutionally ineffective because he misunderstood the law underlying Zuniga's conviction. Accordingly, the claim is procedurally defaulted.

### 2. Argument Two: DeJohn's Lack of a Discernible Trial Strategy

Zuniga next argues that DeJohn was ineffective because he lacked a discernible trial strategy. This argument is also procedurally defaulted, because Zuniga did not raise it through a full round of state review. While Zuniga raised this argument in his brief on direct appeal before the Illinois Appellate Court, State R., Ex. B, at 13, he did not carry it over to his PLA, which made no mention of this claim. *Id.*, Ex. F, at 12–18. Zuniga counters that his claims that DeJohn conceded his guilt, on the one hand, and that DeJohn had no discernible trial strategy, on the other, are "opposite sides of the same coin" and, thus, by presenting the concession of guilt claim, he had fairly presented the trial strategy claim. Pet.'s Reply ¶ 7.

This is incorrect for three reasons. First, the very foundation of the fair presentment requirement eschews the notion that two bases for ineffective assistance can be treated as two sides of the same coin. To avoid default, Zuniga must raise each individual basis for asserting ineffective assistance of counsel. Second, for the reasons stated above, the nature of these claims and the law that applies to them are different. It is one thing to claim that DeJohn made statements that conceded Zuniga's guilt; it is entirely another to say that DeJohn, because of the manner in which he conducted cross-examination and made opening and closing arguments, did

---

[7]   This is especially clear from the Illinois Appellate Court's opinion, which analyzes DeJohn's treatment of Ault's testimony only in the context of determining whether he conceded Zuniga's guilt or failed to develop a discernible trial strategy. State R., Ex. A, at 16–19. Depriving the Illinois courts of the first opportunity to consider DeJohn's actions under the theory that his lack of comprehension rendered his assistance constitutionally ineffective would frustrate the purpose of the fair presentment requirement.

11

not have a trial strategy (or adopted an inconsistent one). This again is clear from the Illinois Appellate Court's opinion, which separates the two arguments and deals with them distinctly. *See* State R., Ex. A, at 16–20. Finally, Zuniga's initial decision to raise lack of a discernable trial strategy as a separate issue before the Illinois Appellate Court belies his argument that the claims are one and the same. Accordingly, Zuniga's second claim is procedurally defaulted.

### 3. Argument Three: DeJohn's Frequent Absence from Trial

Zuniga's third argument is that DeJohn was ineffective because he was frequently absent from trial. Zuniga first raised this issue in his state post-conviction petition, as discussed above. State R., Ex. H, at 6. The argument was ultimately rejected by the state trial court following an evidentiary hearing. State R., Ex. W, at 327. Zuniga appealed, but on different grounds, and never presented the argument in a PLA before the Supreme Court of Illinois. *See generally* State R., Ex. S. Accordingly, Zuniga's third argument is procedurally defaulted.

For his part, Zuniga argues that he did fairly present the issue both before the Illinois Appellate Court and Supreme Court of Illinois. Pet.'s Reply ¶ 9. The references to which Zuniga directs the Court, however, were made in the context of disputing an ancillary motion *in limine*. *E.g.*, State R., Ex. O, at 19 ("The trial court erred in ruling on the state's motion *in limine* and in limiting the scope of the evidentiary hearing."). Thus, this claim is little different from Zuniga's other defaulted claims. Zuniga never fairly presented the argument that DeJohn was constitutionally ineffective because of his absences during trial before a complete round of the Illinois courts. The argument is therefore defaulted.

### 4. Argument Four: DeJohn's Failure to Obtain Fingerprint Testing on the Shotgun

Zuniga's fourth argument is that DeJohn was ineffective because he had failed to obtain fingerprint testing on the shotgun used in Gasic's murder. By Zuniga's own admission, this

12

argument was not fairly presented before one complete round of the Illinois courts. *See* Pet.'s Reply ¶ 10 (identifying no presentment of the argument on direct appeal, and stating that "[t]here was no specific mention of the failure to obtain fingerprint testing on the shotgun in the [state post-conviction] petition").[8] Zuniga never raised an ineffective assistance of counsel claim based on a failure to obtain fingerprinting, but instead sought to produce the fingerprinting through a post-conviction discovery request, which was denied. The goal of the discovery request was to obtain evidence that, if exculpatory, could indicate DeJohn was ineffective for failing to have obtained it. But a post-conviction discovery request seeking potentially exculpatory evidence with the belief this evidence could augment an ineffective assistance claim is insufficient to fairly present the argument that, because DeJohn had not obtained the fingerprinting, he was constitutionally ineffective. Thus, this argument is procedurally defaulted.

### B. Cause and Prejudice for Default

Zuniga's failure to fairly present the above four arguments could be excused if he can establish that cause exists for the defaults and actual prejudice was suffered, or that a fundamental miscarriage of justice resulted in a conviction despite the petitioner's actual innocence. *Buelow v. Dickey*, 847 F.2d 420, 425 (7th Cir. 1988) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). Here, Zuniga does not argue these points, and, as a result, the Court need not consider them. *See Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008).

---

[8] Perhaps acknowledging that this claim was never presented to the Illinois courts, Zuniga further suggests that attempting now to present this claim before the Illinois courts could be "futile" due to state procedural requirements. Pet. Reply ¶ 12. If this is so, Zuniga provides no explanation for why the Court should disregard the fair presentment requirement, or the general rule that federal courts should not collaterally review state court decisions resting on independent and adequate state procedural grounds. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

The closest Zuniga comes to making such an argument is in identifying three "circumstances" at the conclusion of his petition that "explain[]" why the Illinois courts did not grant him relief. The first is that Zuniga's case involves "a particularly gory crime scene" with two murders. Pet. Writ ¶ 101. Zuniga makes no effort, however, to explain why this should warrant habeas relief. Second, Zuniga argues that his appeals did not bring out the issue of DeJohn's associate's participation, and that the allegations of ineffective assistance on direct appeal did not refer to DeJohn by name. *Id.* But this point merely rehashes the Illinois state courts' evidentiary rulings on the involvement of DeJohn's associate—rulings not before this Court—and it fails to explain any prejudice Zuniga believes was caused by the Illinois Appellate Court's omission of DeJohn's name. Finally, Zuniga argues that, because he was tried jointly with Bravieri, "the Illinois state court Justices reviewing his record may have failed to distinguish between the efforts made by [Zuniga's] counsel and those of [Bravieri's] counsel." *Id*. Beyond mere speculation, however, Zuniga does not provide any support for this theory, particularly given that Zuniga's trial was severed from Bravieri's. Accordingly, the Court will not excuse Zuniga's procedural defaults.

### C. Merits Review of Zuniga's Remaining Arguments

Two of Zuniga's arguments—that DeJohn was constitutionally ineffective because (1) he failed to obtain a ruling on the motion to suppress Zuniga's confession, and (2) he conceded Zuniga's guilt—are not procedurally defaulted. The Court will therefore consider them on the merits.

Under AEDPA, the Court gives the Illinois courts' analyses and conclusions as to these arguments great deference. *Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010). The Court cannot grant habeas relief unless a state court's decision on the merits of these arguments was contrary

14

to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or unless the state court decision was based on an unreasonable determination of facts. 28 U.S.C. § 2254(d); *Ebert*, 610 U.S. at 411. This standard "is intentionally difficult for petitioner to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (citations and internal quotation marks omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Under the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984),[9] Zuniga must demonstrate both deficient performance and prejudice in order to make out a claim of ineffective assistance of counsel. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010) (citing *Strickland*, 466 U.S. at 687). As for deficient performance, "[a] Court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). Rebuttal of this presumption requires an error "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* (quoting *Strickland*, 466 U.S. at 687). As for prejudice, "a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

---

[9] Although Zuniga at certain points cites *United States v. Cronic*, 466 U.S. 648 (1984), *e.g.*, Pet. Writ ¶ 92, the petition is best construed as raising arguments solely based on *Strickland*. The closest that Zuniga comes to a *Cronic* claim is his allegation that DeJohn was frequently absent from his trial. *See Bell v. Cone*, 535 U.S. 685, 695–96 (2002) (recognizing that complete denial of counsel occurs when the accused is denied the presence of counsel at a critical stage of criminal proceedings). As explained above, however, this argument is procedurally defaulted.

15

outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). Thus, the standard of review under AEDPA and the standard under *Strickland* are both "highly deferential," and when courts apply these standards together, review is "doubly" deferential. *Id.* at 105 (citations and internal quotation marks omitted).

### 1. Argument Five: DeJohn's Failure to Obtain Ruling on Motion to Suppress

Zuniga first argues that DeJohn was ineffective for failing to obtain a ruling on motions to suppress statements that Zuniga made to the police. In addition to the requirements of deficient performance and prejudice under *Strickland*, Zuniga carries the burden of proof on two additional items the Court must consider in the context of motions to suppress. These items are: (1) whether Zuniga's Fourth Amendment claim is meritorious; and (2) whether Zuniga can demonstrate actual prejudice by showing there is a reasonable probability that the verdict would have been different absent the excludable evidence. *Ebert*, 610 F.3d at 411.

Here, the last Illinois court to consider the substance of Zuniga's claim—which is the relevant court for the purposes of this Court's review, *see Gonzales v. Mize*, 565 F.3d 373, 379 (7th Cir. 2009)—was the Illinois Appellate Court on direct review. In its decision, the Illinois Appellate Court began by accurately stating the *Strickland* standard. State R., Ex. A, at 14–15. It then made the assumption that Zuniga would succeed in suppressing his statements made to the police. *Id.* at 15. Nevertheless, the court concluded that "Ault's testimony, plus the physical evidence presented[,] was sufficient to support defendant's conviction for both murders." *Id.* at 15–16. The court reasoned that these two pieces of evidence—(1) Ault's eyewitness testimony, which placed Zuniga at the scene of both murders and matched Zuniga with a gun recovered at the scene, and (2) evidence of Sarlo's blood on Zuniga's clothing and Sarlo's hair on a pistol grip

and ammunition clip described as belonging to Zuniga—"clearly connect[ed]" Zuniga to the murders, regardless of his statements. *Id.*

In reviewing this analysis, this Court concludes that the Illinois Appellate Court reasonably applied the second prong of the *Strickland* test, as well as the second prong of the *Ebert* test applicable to claims based on motions to suppress, in finding that Zuniga failed to demonstrate the requisite prejudice. Given the strength of the evidence that would remain apart from Zuniga's statements—Ault's testimony, in particular, as well as physical evidence recovered from the apartment—it was reasonable to conclude that Zuniga would have been convicted even if his statements to the police had been suppressed.[10] Additionally, it was not error for the court to assume that Zuniga's motion to suppress would have been successful. *See Strickland*, 466 U.S. at 669 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the [*Strickland*] inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant . . . ."). Accordingly, relief based on Zuniga's first argument is denied.[11]

---

[10] The fact that the Illinois Appellate Court elsewhere relied on Zuniga's statements to the police in upholding his conviction as to Gasic does not mean that its assessment of the probability of the verdict remaining the same was "plainly incorrect." Pet.'s Reply ¶ 26. On the contrary, the portion of the opinion cited by Zuniga supports the view that the state court considered Zuniga's statements to the police as ancillary—albeit probative—proof of Zuniga's involvement in Gasic's murder. *Id.* This is especially clear in reviewing the court's thorough analysis upholding Zuniga's conviction on a theory of accountability. The court relied heavily on evidence derived from Ault's testimony that "defendant was present at the scene at the time Bravieri shot Gasic, [and] defendant did not express any disapproval or opposition to that shooting." State R., Ex. A, at 11.

[11] Zuniga directs the Court to a number of cases that "deal[] with the failure to challenge the voluntariness of a defendant's 'confession,'" as well as a discussion of the "material witness rule," which Zuniga asserts would have required different testimony about whether Zuniga's confession was voluntary. Pet. Writ ¶¶ 93–95; Pet.'s Reply ¶¶ 19–20. Zuniga makes no attempt, however, to explain how these cases or the material witness rule relate to whether there was prejudice caused by DeJohn's failure to seek a hearing, or to the reasonableness of the Illinois Appellate Court's finding of no prejudice.

## 2. Argument Six: DeJohn Conceded Zuniga's Guilt

Zuniga's final argument is that DeJohn conceded Zuniga's guilt and was therefore constitutionally ineffective. Here too the Illinois Appellate Court on direct review was the last court to consider the substance of this argument. The court isolated a number of statements made by DeJohn in opening and closing arguments—some of the same statements Zuniga now identifies in his petition—and concluded that, when viewing these statements in their proper context, "counsel did not concede defendant's guilt." State R., Ex. A, at 17.[12] Instead, the court viewed the comments as an attempt to stress the government's burden of proof. *Id.*

---

[12] Restated in context, these statements were as follows. First, as part of his opening statement, DeJohn stated:

> In my number of years here and elsewhere in execution-style murders, this is one of the, if not only, execution style murder[s] where I've ever seen except by accident, where an act of the Defendant was clearly done with the intention of being identified . . . . Now, does it make any sense at all to have this execution planned? You're going to hear about this plan. It just doesn't make any sense . . . .

State R., Ex. U Pt. 1, at 28–29. Later in his opening statement, DeJohn also stated:

> I'm not even going to stand up here and just simply argue at this juncture about how you can sentence him, whether it should be a death verdict or whether it should be a life verdict or whether it should be a guilty verdict. We are eons away from that. We are at a situation right now at the stage of this case where the government or the State has proof beyond a reasonable doubt to deal with.

State R., Ex. U Pt. 1, at 30. Then, in arguing for a directed verdict to the judge, DeJohn stated:

> There are fact cases, and there are law cases. I have a law case, Judge. I've got a case with an eyewitness. I've got a case where frankly, as the State, if I had the burden, I could prove it beyond a reasonable doubt, I believe, but I don't have that burden, I don't have it; they do. I've got an eyewitness who's credible, positive, believable, beyond a reasonable doubt. I believe that that witness raises proof beyond a reasonable doubt.

State R., Ex. U Pt. 2, at 81–82. Finally, in his closing argument, DeJohn urged the court to believe Ault's testimony and stated:

> They did not say in their testimony that he walked in with the shotgun or that he walked in with the coat, with a shotgun or some kind of an object, we don't even know what the object is. I don't know if it was a polo stick under that coat, but nothing said about my client in that regard. All that we have about my client is that he is there on that date.

State R., Ex. U Pt. 2, at 265.

18

Additionally, the court commented on the trial judge's ability to sift out any impropriety and concluded that, even if any of the statements were improper, they did not cause substantial prejudice. *Id.*

The Court finds the Illinois Appellate Court was reasonable in concluding that Zuniga failed to demonstrate that DeJohn's statements conceded his guilt. Viewed in context, DeJohn's statements: (1) questioned the plausibility of the government's allegation that Zuniga participated in an execution-style murder; (2) criticized the government for failing to prove its case beyond a reasonable doubt, despite having seemingly incriminating evidence; (3) encouraged the trial judge to put aside the question of sentencing and instead focus on reasonable doubt in the government's case; and (4) lauded Ault's credibility in an attempt to cast doubt on, and indicate the incompleteness of, the government's case. Zuniga nevertheless contends that the Illinois Appellate Court "failed to consider the overall effect of trial counsel's so-called strategy" and laments DeJohn's cross-examination of witnesses, which Zuniga believes was unsatisfactory. Pet. Reply ¶¶ 31, 34  These arguments, however, conflate a claim based on concession of guilt—which is properly before this Court—and a claim based on lack of trial strategy, which is procedurally defaulted. Similarly, Zuniga's suggestion that DeJohn placed undue emphasis on Ault's testimony does not amount to a concession of guilt, but instead is aimed at supporting Zuniga's separate—and procedurally defaulted—claim based on DeJohn's misunderstanding of the law. For these reasons, relief based on this argument is denied.

## IV. Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus is denied. Furthermore, the Court will not issue a certificate of appealability. The Court may issue a certificate "only if the applicant has made a substantial showing of the denial of a constitutional

19

right." 28 U.S.C. § 2253(c)(2). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This applies to both the claims the Court found procedurally defaulted and those it considered on the merits. *Id.* Because "a plain procedural bar is present" and prohibits Zuniga's first four claims, the Court will not issue a certificate as to those claims. *Id.* Similarly, as to the claims denied on the merits, Zuniga has not demonstrated that jurists of reason would find the issues debatable, that different courts might resolve the issues differently, or that Zuniga's claims are adequate such that the Court should encourage Zuniga to proceed further. *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983). Accordingly, both the petition and certificate of appealability are denied.

**IT IS SO ORDERED.**　　　　　　　　　　**ENTERED:  12/15/17**

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ John Z. Lee*

　　　　　　　　　　　　　　　　　　　　　　　　**JOHN Z. LEE**
　　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**